T.C. Memo. 1999-185

UNITED STATES TAX COURT

MICHAEL F. & JANE H. CONNOR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3552-98.                          Filed June 7, 1999.

<u>David J. Bohl</u>, for petitioners.

<u>Christa A. Gruber</u>, for respondent.


MEMORANDUM OPINION

PAJAK, <u>Special Trial Judge</u>:  This case was heard pursuant to
section 7443A(b)(3) and Rules 180, 181, and 182.  All section
references are to the Internal Revenue Code in effect for the
years in issue.  All Rule references are to the Tax Court Rules
of Practice and Procedure.

Respondent determined the following deficiencies and accuracy-related penalties:

| Year | Deficiency | Accuracy-related Penalty Sec. 6662(a) |
|------|------------|---------------------------------------|
| 1993 | $3,616 | $723 |
| 1994 | 6,089 | 1,218 |

The issues we must decide are: (1) Whether respondent properly recharacterized rental income petitioners received during the taxable years at issue as nonpassive income pursuant to section 469, and (2) whether petitioners are liable for accuracy-related penalties for the taxable years at issue.

The parties submitted this case fully stipulated pursuant to Rule 122, and the stipulated facts are so found. Petitioners resided in Mukwonago, Wisconsin, at the time they filed their petition.

On November 1, 1979, petitioner Jane H. Connor (Ms. Connor), lessor, executed a 3-year standard office lease (Lease) with Michael F. Connor, D.D.S., S.C., lessee, through petitioner Michael F. Connor (Dr. Connor). Dr. Connor is the president and a shareholder of a personal service corporation named Michael F. Connor, D.D.S., S.C. The office was located at 603 Rochester Street, Mukwonago, Wisconsin (Rochester Street building).

The terms of the Lease required the lessee to make monthly rental payments in the amount of $900, for a total rent of $32,400 for the 3-year period ending October 31, 1982. On October 31, 1982, Ms. Connor executed an Addendum to Lease dated

Nov. 1, 1979 (Addendum), with Michael F. Connor, D.D.S., S.C. The Addendum provides that:

> This lease will continue in force between Michael F. Connor, D.D.S., S.C. "Lessee" and Jane H. Connor "Lessor" until either party terminates such with written notice of 90 days.

> Rental increase can be made only upon agreement of both parties.

During 1993 and 1994, Ms. Connor owned the Rochester Street building and rented it to Michael F. Connor, D.D.S., S.C.

On October 31, 1993, a portion of Michael F. Connor, D.D.S., S.C., was sold for $110,000 to Dr. McKeever.

Dr. Connor practiced dentistry at the Rochester Street building. In 1993 and 1994, he was employed full-time by Drs. Connor & McKeever, S.C. In 1993 and 1994, Dr. Connor received wages in the amounts of $168,808.87 and $181,382.84, respectively, from Drs. Connor & McKeever, S.C.

On their 1993 and 1994 Schedules E, Supplemental Income and Loss, petitioners reported rents received from Michael F. Connor, D.D.S., S.C., in the amounts of $22,000 and $24,000 for 1993 and 1994, respectively, from the rental of the Rochester Street building. After deducting expenses, petitioners reported income in the amounts of $10,503 and $15,937 for 1993 and 1994, respectively, from the rental of the Rochester Street building. Petitioners also reported rental real estate losses in the amounts of $33,214 and $5,679 for 1993 and 1994, respectively,

from the rental of another property listed as Jefferson Manor Apartments. They reported carryover passive losses of $23,106 and $45,830 for 1993 and 1994, respectively.

Petitioners used $10,490 and $15,906 of the passive losses to offset the Rochester Street building rent and reduced the amounts of rent to the amounts of $13 and $31 for 1993 and 1994, respectively. Petitioners further reduced the amounts of rent to $0 for both years after deduction of passive losses from a partnership listed as Dodge Corners Inv. Cl. in the amounts of $13 and $31 for 1993 and 1994, respectively. Thus, petitioners used total passive losses of $10,503 ($10,490 + $13) and $15,937 ($15,906 + $31) to offset the rental incomes from the Rochester Street building for 1993 and 1994, respectively.

Respondent determined that the rental profits from the Rochester Street building are nonpassive income and therefore were not allowable to offset petitioners' passive losses. As respondent stated in the notice of deficiency:

> On Schedule E of your 1993 AND [sic] 1994 returns, you reported net profits from your rental properties in the amounts of $10,503 in 1993 and $15,937 in 1994. You treated these profits as passive income which you than [sic] used to offset passive losses. It has been determined that these rental net profits are nonpassive income and therefore unallowable to offset your passive losses. Therefore, your taxable incomes for 1993 and 1994 are increased by $10,503 and $15,937, respectively.

Respondent also adjusted petitioners' itemized deductions for both years, child care credit for 1993, and the exemptions

deduction for 1994.  Respondent also determined that petitioners were liable for the accuracy-related penalties for both years.

Respondent used the recharacterization rule of section 1.469-2(f)(6), Income Tax Regs., to characterize petitioners' income from the Lease as nonpassive.  Under this rule:

> An amount of the taxpayer's gross rental activity income for the taxable year from an item of property equal to the net rental activity income for the year from that item of property is treated as not from a passive activity if the property--
>
> (i) Is rented for use in a trade or business activity * * *  in which the taxpayer materially participates * * * for the taxable year; * * *

The recharacterization rule was issued on May 15, 1992, and it reads nearly verbatim as it appeared when it was proposed on February 25, 1988.  See Schwalbach v. Commissioner, 111 T.C. 215, 220-221 (1998).

Petitioners argue that the recharacterization rule does not apply for the subject years to recharacterize their income from the Lease because, petitioners state, the effective date and transition rules in section 1.469-11(b)(1), Income Tax Regs., operate to prevent characterizing Dr. Connor as a material participant of the dental activity of his personal service corporation.  Section 1.469-11, Income Tax Regs., provides in relevant part:

> § 1.469-11.  Effective date and transition rules.--(a) Generally applicable effective dates. Except as otherwise provided in this section--

(1) The rules contained in §§ 1.469-1, 1.469-1T, 1.469-2, 1.469-2T, 1.469-3, 1.469-3T, 1.469-4, 1.469-5, and 1.469-5T apply for taxable years ending after May 10, 1992.

* * * * * * *

(b) <u>Additional effective dates</u>--(1) Application of 1992 amendments for taxable years beginning before October 4, 1994. * * * for taxable years that end after May 10, 1992, and begin before October 4, 1994, a taxpayer may determine tax liability in accordance with Project PS-1-89 published at 1992-1 C.B. 1219 * * *.

Project PS-1-89, <u>supra</u>, generally contains: (1) The second set of regulations that the Commissioner issued to define the word "activity", see <u>Schwalbach v. Commissioner</u>, <u>supra</u> at 220-225, for a detailed discussion of the three sets of regulations which the Commissioner issued on that subject, and (2) the effective date rule in section 1.469-11(a)(1), Income Tax Regs.

Petitioners rely on the fact that the second set of regulations made no mention of attributing the activity of a corporation to a shareholder, see 57 Fed. Reg. 20802 (May 15, 1992), and that the first set of regulations provided that "a taxpayer's activities do not include operations that a taxpayer conducts through one or more entities (other than passthrough entities)", see sec. 1.469-4T(b)(2)(ii)(B), Temporary Income Tax Regs., 54 Fed. Reg. 20543 (May 12, 1989). According to petitioners, the fact that the second set of regulations did not

specifically disavow the rule of nonattribution as stated in the first set of regulations means that the nonattribution rule continued to apply up until the time that the Commissioner issued the third set of regulations which provided explicitly that "A taxpayer's activities include those conducted through C corporations that are subject to section 469". Sec. 1.469-4(a), Income Tax Regs.

We disagree with petitioners' assertion that Dr. Connor cannot be a material participant of the dental activity of his personal service corporation in a taxable year for which the effective date and transition rules apply. In Schwalbach v. Commissioner, supra, a setting strikingly similar to the setting at hand, the taxpayers argued similarly that the effective date and transition rules of section 1.469-11(b)(1), Income Tax Regs., coupled with no mention of attribution in the second set of regulations, allowed them to apply a nonattribution rule similar to that appearing in the first set of regulations. We disagreed. See id. at 230. Petitioners' attempt to dismiss as dicta our quick disposition of that issue is unavailing. That the taxpayers in Schwalbach could not escape the moorings of the attribution rule flowed naturally from our discussion of the primary issue. As we had observed, an attribution rule appears in the third set of regulations, the preamble to those regulations clarifies that the silence as to attribution in the second set of regulations indicates that attribution was meant to

apply, and an attribution rule in section 469 is consistent with that section and its legislative history.  Id. at 223-229.

The same result follows here.  Because Dr. Connor could, and did, materially participate in the dental activity of his personal service corporation, the recharacterization rule of section 1.469-2(f)(6), Income Tax Regs., operates during the subject years to characterize petitioners' income from the Lease as nonpassive.  We sustain respondent's determination on this issue.

Finally, we must decide whether petitioners are liable for accuracy-related penalties for the years in issue.  Section 6662(a) imposes an accuracy-related penalty in the amount of 20 percent of the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations.  Sec. 6662(a) and (b)(1).  Negligence is any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue laws.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Moreover, negligence is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Disregard includes any careless, reckless, or intentional disregard of rules or regulations.  Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

Under section 6664(c), no penalty will be imposed with respect to any portion of any underpayment if it is shown that

there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. This determination is based on all of the facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

On the record before us, we find that there was reasonable cause for petitioners to take the position they did and that they acted in good faith with respect to that position. Accordingly, we find that the penalties under section 6662(a) should not be imposed with respect to the years in issue.

We have considered all arguments made by the parties and to the extent not discussed above, we find these arguments to be without merit or irrelevant.

<u>Decision will be entered for respondent as to the deficiencies and for petitioners as to the accuracy-related penalties</u>.